BROWN *vs.* HAFF & LYON.

Upon a motion to dissolve an injunction, if the complainant relies upon affidavits, annexed to the bill under the 37th rule of the court of chancery, to contradict the answer, the defendant has a right to read affidavits, or other evidence, in support of his answer.

The act to abolish imprisonment for debt has not deprived the court of chancery of the power to issue a writ of *ne exeat*, in cases of equitable cognizance, where such writ would have been allowed previous to the passage of that act. But a *ne exeat* will not be granted upon a mere legal demand, upon which the complainant would not have been entitled to equitable bail in this court before the passing of that act, although the defendant is about to remove from the state.

The court of chancery has jurisdiction, upon a bill filed by the vendor, to decree a specific performance of a contract for the purchase of real estate, and to compel the vendee to pay the purchase money, although the complainant has a remedy at law upon the contract.

The court of chancery will not compel a purchaser to take a defective title, except where the purchase has been made at his own risk as to title, or where he has agreed to accept such a title as the vendor is able to give. It is sufficient, however, if the complainant can make a good title at the time of the decree, or when the master makes his report upon the title.

But to entitle the complainant to a writ of *ne exeat*, upon a bill for a specific performance of a contract, against the vendee, he must show a debt actually due; and must therefore show affirmatively that he is able to make a good title to the premises agreed to be sold.

THE bill in this cause was filed to compel the specific per- April 7, formance of a contract to purchase land of the complainant, by the defendant Haff, and to compel the latter to apply $550 on the contract; which sum, it was alleged, had been advanced by Haff to the defendant Lyon, on account of such contract, although Lyon had given a note, or accountable receipt therefor. The bill alleged that the defendant Haff refused to complete his purchase, and was proceeding by a suit at law to recover back the money advanced to Lyon; and that he threatened to leave the state. An answer on oath was waived; and several affidavits were annexed to the bill, for the purpose of showing that Haff had admitted that he had advanced money to Lyon towards his contract with the complainant, and also to show that he intend-

ed to remove from the state.    Upon filing this bill, and the affidavits, a ne exeat was granted.    An injunction was also issued to restrain the defendant Haff from collecting the $550 from Lyon ; but with liberty to proceed to judgment in the suit already commenced, without prejudice to the complainant's equitable rights.    The answer of the defendant Haff denied that he made, or agreed to make, the advance of $550 to Lyon on account of the contract with the complainant ; but stated that the same was advanced to him as a mere loan, for which Lyon gave a note, or accountable receipt, payable to him with interest.    Haff further alleged that the complainant defended the suit at law, in the name of Lyon, and upon the trial thereof, called as witnesses the persons whose affidavits are annexed to the bill, for the purpose of proving that the $550 was advanced to be applied on the contract.    Haff also called witnesses, who were present at the time Lyon received the money and gave his note therefor, to show that the fact was otherwise ; and that upon this testimony the jury found a verdict for the plaintiff in that suit.    Haff admitted that he intended to remove from this state to the state of Illinois to reside.    He also admitted that he had refused to complete the purchase ; because he discovered that the complainant had defrauded him in making the contract, and could not give a perfect title to the land.    Upon this answer, and upon an affidavit, and the certificate of the clerk, showing the result of the trial at law and the names of the persons who were sworn as witnesses, the defendant Haff moved to dissolve the injunction, and to discharge the ne exeat.

*J. Rhoades,* for the complainant.    According to the terms of the defendants' agreement, and the reference therein to the joint bargain of the complainant and his associates, with Lyon, the defendant was bound to pay the purchase money, at the time stipulated, as a condition precedent to obtaining his deed.    (*Fuller* v. *Hubbard,* 6 *Cowen's Rep.* 13.)    And having omitted to do so, or to tender the money, but having, on the contrary, [refused to pay the same, or to fulfil the bargain, the injunction and ne exeat

ought not to be dissolved. The defendant cannot deny notice of the original agreement with Lyon, which is expressly referred to in his agreement with the complainant; and therefore the latter agreement must be construed in connection with the former. And the payment made by the defendant to Lyon, must be taken to have been made in accordance therewith.

In any event, as no want of responsibility is pretended, the court will retain the injunction and ne exeat until the hearing, unless the defendant shall give satisfactory security to perform the decree. This is necessary for the complainant's safety, inasmuch as the defendant has no real estate within the jurisdiction of this court upon which the decree could operate, if his personal property should be removed out of its jurisdiction. The alleged incumbrances against Lyon form no objection, inasmuch as the same have been in part removed, and may be wholly removed before a decree; and the decree may be so framed as to render the defendant perfectly secure. (*Clute* v. *Robinson*, 2 *John. Rep.* 595.)

The verdict of the jury, in the trial at law, was contrary to the evidence; and a case has been made for the purpose of obtaining a new trial on that ground, and also on the ground that the judge improperly excluded the testimony of David Brown. For which purpose we rely upon the cases of *Young* v. *Black*, (7 *Cranch*, 565,) *Slade* v. *Halsted*, (7 *Cowen*, 322,) *Harden* v. *Gordon*, (2 *Mason*, 541,) *Hills* v. *Bannister*, (8 *Cowen*, 31,) *Maze* v. *Miller*, (1 *Wash. C. C. Rep.* 328,) *Wardell* v. *Hughes*, (3 *Wend.* 418,) *Thompson* v. *Faussat*, (1 *Peters' C. C. Rep.* 182,) *Denison* v. *Bacon*, (10 *John. Rep.* 198,) *Rumsey* v. *Leek*, (5 *Wend.* 20,) *People* v. *Howell*, (4 *John. Rep.* 298,) *Pearson* v. *Pearson*, (7 *John. Rep.* 26,) and *Schoonmaker* v. *Roosa*, (17 *John. Rep.* 301.)

*S. Cheever*, for the defendant Haff. The affidavits and bill do not shew sufficient to authorize a ne exeat, even before the statute to abolish imprisonment for debt. The complainant does not shew any indebtedness, except for property of the defendant in the complainant's own hands. And that

the defendant could not take out of the state with him. He shews no balance of indebtedness. (*Hoffm. Pr.* 94.)

A ne exeat should be granted only in cases purely equitable; and not in cases where a remedy can be had at law. (*Gardner* v. ———, 15 *Ves.* 444; 3 *Atk.* 501.) But had there been a positive debt due, and sworn to, the defendant could not have been holden to bail, since the act to abolish imprisonment for debt. And if the defendant had been brought up on a warrant issued under the third and fourth sections of that act, and shewn on his examination what he has shewn by his answer here, he would have been discharged by the judge. The legislature, by that act, has prohibited the imprisonment of a debtor, except by the mode therein pointed out. The statute virtually takes away the power from this court of issuing a writ of ne exeat for a simple indebtedness; otherwise the provisions of the act could be evaded by filing a bill for a debt, and thus doing by a ne exeat what could not be done at law.

The injunction should be dissolved, because the equity of the bill is denied by the answer under oath; although an answer on oath was waived. The facts stated in the affidavit are insufficient of themselves to sustain the injunction; and they are denied by the answer. And the trial and verdict in the suit at law ought to be deemed conclusive as to these facts. The injunction should in no event be retained, unless the complainant gives security to indemnify the defendant against the loss of the amount of the note against Lyon.

The affidavit of S. Cheever, embodying the certificate of the clerk of Schenectady county, may be read on this motion. (*Haight* v. *Case,* 4 *Paige,* 525.)

THE CHANCELLOR. The charge in the complainant's bill is positive, that the $550 was advanced to Lyon under an agreement that it should be applied on the contract of Haff with the complainant; Lyon allowing Haff for the interest of the money, until the payment upon the contract became due. And the answer of the defendant is as positive that no such agreement was ever made. The affidavits annexed

to the bill go strongly to corroborate the complainant's statement, although none of the deponents were present when the alleged agreement, on this subject, was made with the complainant, or when the money was received by Lyon. And if the question as to the dissolution of the injunction depended upon the charge in the bill, and this denial of the defendant alone, I should, upon the strength of those affidavits, retain the injunction till the hearing. But it has already been decided that a defendant may, upon a motion to dissolve the injunction, introduce other evidence in support of his answer, to rebut the affidavits annexed to the bill under the 37th rule. In this case, the defendant Haff produces the certificate of the clerk of the circuit, showing that all these deponents were examined as witnesses on the trial at law, and that the jury, notwithstanding their testimony, found a verdict for the plaintiff Haff. There is no suggestion here, that there was any collusion between Haff and Lyon as to the defence of that suit. On the contrary, it is stated in the answer that the defence of the suit was conducted by the complainant's counsel in the name of Lyon. Besides; the complainant was not present when Lyon received the money, and therefore he could not know positively what agreement was made between Haff and Lyon at that time, in relation thereto. I have some doubts as to the propriety of granting this injunction originally. If Lyon received the money for the complainant, as an advance by Haff on his contract of purchase, the suit to recover back the money was one in which the defence of Lyon was complete at law, and the complainant has his remedy against Lyon for the money received for his use. Under the circumstances of this case, as they now appear, I think the injunction should not be any longer retained.

The question as to the discharge of ne exeat depends upon different principles. The act to abolish imprisonment for debt does not affect the power of this court to issue a ne exeat in any case of equitable cognizance in which it was proper to grant the writ previous to the passage of that act. The writ was never granted, except upon proof, or at least a probable presumption, that the defendant was about to leave the state.

The legislature, therefore, have not thought it expedient to deprive this court of the power of requiring this kind of bail, in cases which are clearly of equitable cognizance, where the defendant is about to elude the justice of the court, by removing beyond its jurisdiction. And the first section of the statute was so framed as to protect parties in this court from arrest or imprisonment upon executions merely; while in courts of law they are exempted from arrest on any civil process, except in the cases provided for in the second section of the act. (*Laws of* 1831, *p.* 396.) In cases of mere legal cognizance, in which the court would not have granted a ne exeat previous to the act of April, 1831, this court will not now extend its jurisdiction for the purpose of giving to a complainant the benefit of equitable bail, although the defendant is about to remove from the state. In such cases the creditor must be left to the remedy provided for him by the legislature, by a proceeding under the third section of the act; however imperfect that remedy may be.

A suit in this court, against the vendee, to compel a specific performance of a contract to purchase land, has always been sustained as a part of the appropriate and acknowledged jurisdiction of a court of equity; although the vendor has, in most cases, another remedy, by an action at law upon the agreement to purchase. Where it is evident, therefore, that the complainant is in a situation to give a clear and perfect title to the premises, and that the defendant is wholly without excuse in refusing to complete the purchase, so that a specific performance must finally be decreed, the complainant is entitled to a ne exeat, upon furnishing the usual evidence that the defendant intends to remove beyond the jurisdiction of the state. (*Goodwin* v. *Clark*, 2 *Dick. Rep.* 497. *Boehm* v. *Wood*, *Turn. & Russ. Rep.* 332.) Even in cases of this kind, however, if the specific performance, on the part of the defendant, consists in a payment of the purchase money merely, he cannot be taken in execution on the decree. The only effect of the ne exeat, therefore, will be to prevent the defendant from removing with his property beyond the jurisdiction of the court; and thus to render him amenable to such process as

may be necessary to reach his property, or to compel him to apply it in payment of the decree.

This court will not decree a specific performance where the vendor cannot make a clear and undoubted title to the premises, unless the purchase has been made at the risk of the vendee as to the title, or the latter has agreed to accept such title as the vendor was able to give. In general, however, it is not necessary for the complainant to show that he was able to give a good title at the time of making the agreement to sell, or even at the commencement of the suit. It will be sufficient if he can give a perfect title at the time of the decree, or at the time when the master makes his report. (*Langford* v. *Pitt,* 1 *P. Wms.* 630. *Clute* v. *Robinson,* 2 *John. Rep.* 595. *Coffin* v. *Cooper,* 14 *Ves.* 205.) But to entitle the complainant to a writ of ne exeat, he must show a demand actually due at the time the writ is issued. He must therefore show affirmatively, at that time, that he is able to make a clear and unencumbered title to the premises agreed to be sold. In an anonymous case referred to by Mr. Dickens in a note to the case of *Goodwin* v. *Clarke,* Lord Thurlow inquired how it appeared that the complainant could make a good title? And that question not being satisfactorily answered, the ne exeat was refused. And in *Morris* v. *M'Neil,* (2 *Russ. Rep.* 604,) Lord Eldon discharged the writ, although the defendant had entered into possession of the property and had received the rents and profits for some time, because it did not sufficiently appear that the complainant could give a good title. He there says : "Unless the court can make it out to be quite clear that there must be a specific performance, it cannot grant the writ of *ne exeat regno.*" In the present case it is neither alleged in the bill, nor sworn to in any of the affidavits thereto annexed, that the complainant had a clear and unencumbered title to the premises at the time of the commencement of this suit, or such a title as the defendant was in equity bound to receive. The complainant should at least have stated that he believed he was able to give to the defendant a good title. But if the answer is true, the complainant did not obtain a perfect title by the conveyance from Lyon and his

wife, as it was subject to heavy encumbrances. If the defendant proves the fraudulent misrepresentation stated in his answer, that alone will be sufficient to prevent a decree for a specific performance, although the complainant may hereafter be able to give him a perfect and unencumbered title. The complainant in the end may be entitled to a decree ; but he certainly has not shown sufficient at this time, to entitle him to retain this ne exeat. It must therefore be discharged.