HENRY T. LUCKETT, Respondent, v. ANTHONY C. WILLIAMSON, Appellant.

*Vendors and Purchasers—Title.*—A vendor may enforce a specific performance of a contract for the sale of lands, if he can show a good title at the time of trial or decree.

*Vendors and Purchasers—Statute of Frauds.*—A purchaser may insist upon the defence of the statute of frauds, although he confess the parol agreement. (R. C. 1855, p. 1238, § 47.) A part performance, by the vendee, of a parol contract for the sale of lands will not avail the vendor.

Luckett v. Williamson.

*Appeal from the St. Louis Land Court.*

This was a suit to enforce the specific performance of a contract for the sale of a tract of land in St. Charles county.

The petition stated that on October 6th, 1857, he sold to the defendant a tract of land in the Portage des Sioux common fields, part of lots 122, 123, 124, 125, and 126, and then describing the same by courses and distances, and containing 159 44-100 acres; that by the terms of sale, $2,500 were to be paid in cash, $2,500 on October 1, 1858, and $2,500 on October 1, 1859, the deferred payments to bear interest from October 6, 1857; that defendant paid $2,500 in cash; that it was agreed that as soon as a survey could be made, plaintiff should make and deliver a sufficient deed with covenants of warranty, and that defendant should give his notes for the deferred payments, secured by deed of trust; that plaintiff gave defendant a receipt setting forth the terms of sale; that plaintiff tendered defendant a bond for a deed, which defendant refused; that defendant took possession of said land in October, 1857, and has retained the same; that defendant refused to make the deferred payments; that he tendered defendant a deed with warranty; that he brought into court a deed dated August 13, 1861; and praying judgment for $5,000, with interest from October 6, 1857, and that said judgment be enforced by a sale of the land.

This suit was commenced August 15, 1861. The defendant filed his answer, at the September term of the court, denying that he bargained for the land as described in the petition, and alleging that the plaintiff, representing that he had good title to the farm then claimed by him, and that said farm contained 160 acres, and that he knew that by a survey made only 27 acres were under the waters of lake Marais Temps Clair; that he did bargain for said farm at the sum of $7,500, and paid $500 cash, and that he was to pay $2,000 on October 1, 1857, when plaintiff was to give him a good warranty deed, securing an indefeasible title in fee simple, and defendant was to give his notes; that by

the contract there were to be but 27 acres in the lake, whereas there were 44 acres under the waters of said lake; he denied that plaintiff tendered a bond for a deed; denied that he was to give a deed of trust; denied that plaintiff tendered a deed conveying title; and denied that the plaintiff had the title to convey; alleged that the contract on his part was verbal, not witnessed by any writing signed by him; specified the defects of title; alleged that he had made valuable improvements; and prayed judgment for the $2,500 paid, with interest, and for the value of the improvements; and offered to surrender possession upon being paid.

By consent of parties, the venue was changed to the St. Louis Land Court, in which the defendant filed an amended answer, setting forth the same matters, and pleading the statute of fraud expressly, and claiming its benefit, offering to surrender possession, and praying that the value of his improvements be set off against rents and profits; that he might have judgment for the $2,500 paid, and interest, and that the land might be sold to pay the same.

At the trial in the Land Court, plaintiff called from defendant's possession, and read in evidence, a receipt given by him to defendant, dated August 31, 1857, stating: "Received of A. C. W. $500 in part pay of my farm, which I have this day sold him for $7,500, to give possession October 1, 1857, upon his paying $2,000, and giving his notes with interest, when I am to give him a general warranty deed, retaining a lien for the notes."

Plaintiff also gave parol testimony as to the contract of sale; proved a tender of the deed dated August 13, 1861, on August 14, 1861.

Defendant then proved the defect of the title to part of the land, in the heirs of Whittley, and showed from the record of a suit of one St. Louis v. Luckett, that he knew of the defects. He also offered testimony to show that by the contract there were to be but 27 acres in the lake; and proved the value of his improvements. The title to the Clement lot, No. 125, had been made good since the sale. In rebuttal,

plaintiff offered evidence as to the conversation at the time of the sale; then read a deed from the heirs of Samuel Whittley, dated June 29, 1860, conveying the Whittley lot, No. 122; an act February 10, 1864, (Sess. Acts, 1863–4, p. 279,) authorizing Adeline Whittley, a minor, to make the deed ratifying the previous deed in which she had joined; a deed from said Adeline Whittley, dated April 16, 1864, but a few days before the trial; a deed from Wm. A. Whittley, dated December 9, 1863.

Thomas Whittley, the confirmee of lot 122, died 1816, leaving issue, 1, Paul; 2, Nancy, wife of John Patton; 3, Samuel, who left issue, Angelina, wife of Austin A. Clark; Mary, wife of S. J. Melvin; William A., and Adeline. Patton and wife, and the issue of Samuel Whittley, all joined in the deed of June 29, 1860.

Paul Whittley died about 1836, leaving a widow. At the sale, plaintiff did not have the Clermont title, but had procured it before the trial.

*Whittelsey*, for appellant.

I. That the appellant was entitled to have the land with a good and complete title, was decided in the former case between the same parties—31 Mo. 54. (Washington et al. v. Ogden, 1 Black., U. S., 540.) The plaintiff did not at the trial show a perfect title. As Paul Whittley took by descent one-third of the Whittley lot, his widow, there being no issue, took one-half of his real estate absolutely. (R. C. 1835, p. 228, § 3.) The words of the Code are, " shall be entitled," not " shall be endowed," as in the first section, and to that interest her heirs are entitled if she be dead. There is no evidence of any administration, nor of any will.

II. Defendant may insist upon the statute of frauds, although he confess the contract as stated. (R. C. 1855, p. 1238, § 47; R. C. 1855, p. 807, § 5; Notes to Lester v. Foxcraft, 1 Wh. & Tud. L. C. Eq. 567, 573; 2 Sto. Eq. § 757; Moore v. Edwards, 4 Ves. 23; Cooth v. Jackson, 6 Ves. 12; Rowe v. Teed, 15 Ves. 375; Sir Wm. Grant's opin-

ion in Blagden v. Bradbear, 12 Ves. 471; Whitbread v. Brockhurst, 1 Bro. Ch. 407 ; Whitehurst v. Bebis, 2 Bro. Ch. 569 ; Hook v. Turner, 22 Mo. 333, 335.)

The defendant denies the contract, as alleged, and charges that there were to be but 27 acres in the lake, whereas there were 44 acres of land which were of no value to the defendant.

The receipt given by plaintiff requires parol proof to identify the land, and the contract could not on that memorandum be enforced as against him. (King v. Wood, 7 Mo. 389; Falman v. Dent, 3 Due. 395 ; Abel v. Radcliffe, 13 J. R. 297 ; Blagden v. Bradlee, 12 Ves. 466.) And as the defendant denies the contract as alleged, if it be enforced at all it must be enforced as he states it.

III. The decree is erroneous in requiring the whole of the unpaid purchase money, with interest from October 1, 1857, to be paid *instanter*, and that the land be sold immediately.

The charge of interest for the whole period since the sale was erroneous. If vendee offer to rescind on getting back his money, he need not pay interest. (Rutledge v. Smith, 1 McCord. Ch. 399, interest refused until title tendered ; Osborne v. Bremas, 1 Dessauss. 486 ; Wightman v. Reeside, 2 Dessauss. 578.)

The judgment of the court treats this case as if it were a suit at law upon an executed contract for the purchase money, whereas it is a bill in equity to compel the specific performance of an executory contract, the terms of which the defendant denies as alleged, and sets up a variation. He does not even confess the contract as alleged, but varies it ; and the plaintiff does not accept the contract as varied, and pray it to be enforced as claimed by defendant, but demands that his own claim be enforced.

The plaintiff does not offer to do equity ; he claims a legal right, which it is shown he does not have.

IV. The submissions of the answer do not bind the defendant when the plaintiff amends his bill. (Ld. Abingdon v. Butler, 1 Ves. 206, 210.) They could only be binding

when the defendant varies the contract, and submits to perform it as varied, and does not rely upon the statute. If the plaintiff amend and accept the contract as defendant offers to perform it, it would then be too late for the defendant, in his answer to the amended bill, to insist upon the statute. That would only be in cases where the plaintiff accepted, as was the case in Spurrier v. Fitzgerald, 6 Ves. 548, and then the defendant could not deny his submission. But that is not this case. (Burgess v. Wheate, 1 Ed. Ch. 24; 15 Ves. 353; Roberts v. Massey, 13 Ves. 561.)

*Lewis*, for respondent.

I. The plaintiff exhibited at the trial below a perfect title to the land contracted for. The only objection raised against it by appellant is, that the dower right of Paul Whittley's widow is outstanding in her heirs. But it does not appear that dower was ever assigned to her. Consequently she had no descendible estate; none that either she or her heirs could ever maintain ejectment upon, or that could even be sold under execution. (Waller v. Mardus, 29 Mo. 27.)

There was, therefore, no title outstanding in the heirs of Paul Whittley's deceased widow. The statute (R. C. 1835, p. 228, § 3,) treats of the right of the widow as widow and dowress, and not as an heir.

II. While it may be admitted that a defendant can insist on the statute of frauds, and at the same time admit the existence of the contract as stated, yet it by no means follows that he may in the same breath claim the benefit of the statute and the benefit of the contract. This would be, as the defendant has attempted to do in this case, claiming a specific execution, or damages for the non-performance of an absolutely void contract, which never had any legal existence at all. But this proposition was disposed of in a former case about the same subject matter. (Luckett v. Williamson, 31 Mo. 54.) It can make no difference whether the contract in question be that alleged by the plaintiff, or one which the defendant sets up in his place. The principle is the same.

Respondent insists further that defendant was precluded by the evidence from setting up the statute of frauds. The contract was executed by the vendor's delivery of possession. (Sug. Vend. 84 ; Bean v. Vallé, 2 Mo. 109, [135] ; Charpiot v. Sigerson, 25 Mo. 63, 65 ; Young v. Montgomery, 28 Mo. 604.)

III. All the points made by appellant on the subject of interest proceed upon the following assumptions, viz : 1. That the contract as stated by plaintiff, was disproved on the trial ; 2. That the contract as stated by defendant, was established by the evidence ; 3. That the defendant never was in default, but the plaintiff having forfeited his contract, the defendant had the right to offer to rescind, etc.

It has long been settled that failure of title is no breach of a contract for a warranty deed, nor even of the warranty itself, unless there has been an actual eviction under the superior title. (Shelton v. Pease, 10 Mo. 473, 482 ; Streeter v. Henley, 1 Car., Ind., 401 ; Greenby v. Wilcocks, 2 Johns. 1 ; Kent v. Welch, 7 Johns. 258.)

IV. The act of the Legislature authorizing Adeline Whittley to make a deed was constitutional and valid. There was no retrospective feature in it whatsoever, unless it was in the recitals— certainly none in the enactment. In the case of Routsong v. Wolf, (35 Mo. 174,) there were two acts of Assembly involved. One undertook to legalize a deed previously executed which was void when made ; the other authorized an infant to make a deed *in futuro*. The court held that the former act was retrospective and void, but did not so decide as to the latter.

*Clover*, for respondent.

I. Part payment of the purchase money, and taking possession of the land contracted for, are now always to be deemed part performance of a contract sufficient to take a case out of the statute to prevent frauds and perjuries. (Sto. Eq. Ju. §§ 759–64, &c., *passim*.)

II. Time is not any essence of the contract in this case.

If a party comes *recenti facto* to ask for a specific perform ance, the suit is treated with favor by a court of equity. (Sto. Eq. Ju. *ubi supra.*)

III. In the case at bar, there has been no change of circumstances affecting the character or justice of the contract, which could give defendant cause to complain against the specific performance of a contract sought for by himself, by which he is morally as well as legally bound, and which he has enjoyed the fruit of.

WAGNER, Judge, delivered the opinion of the court.

When this case was before this court on a previous occasion, (31 Mo. 54,) it was decided that an agreement to convey land by general warranty, amounted to an engagement that the party so conveying has or will have an indefeasible title. That a vendor cannot have a specific performance of a contract without showing that he has a good title to the land he has bargained to sell. The objection that formerly arose seems to have been obviated, and a good title was tendered at the last trial. And a specific performance will be decreed, though the title was not perfect when the bill was filed, if it appear that it can be perfected before the judgment or decree. If any injury has resulted, it will be compensated by charging the complainant with interest. (Clute v. Robinson, 2 Johns. 595 ; Pierce v. Nichols, 1 Paige, 244 ; Brown v. Huff, 5 Paige, 235 ; Viele v. Troy & B. R.R., 20 N. Y. 184.)

But the great difficulty in this case is the plea of the statute of frauds. The plaintiff gave a written receipt, which was sufficient to take the case out of the statute as far as he was concerned ; but as to the defendant, the contract was entirely verbal.

It is the constant practice in courts of chancery to compel a specific performance by the vendor of a contract for the sale of lands, subscribed by him, although the purchaser has not bound himself by subscribing the contract. Bills for specific performance are supported in such cases, both be-

cause the statute of frauds only requires the contract to be signed by the party to be charged, and because the plaintiff, by the act of filing the bill, makes the contract mutual, and it is optional with a party who has made a parol contract to convey land to avail himself of the plea of the statute or not. (McGowen v. West, 7 Mo. 570; Farrar v. Patton, 20 Mo. 81; Ivory v. Murphy, 36 Mo. 534; Worrall v. Munn, 1 Seld. 229; 4 Russ. 298; 1 Russ. & Myl. 391; 7 Ves. 265; 1 Edw. Ch. 5; 2 Jac. & Walk. 426.)

The defendant denies the contract as set forth in plaintiff's petition, and alleges a different contract, and in addition thereto pleads the statute of frauds.

Where a bill for a specific performance of a parol agreement was filed, the only witness for the plaintiff proved an agreement different from that stated in the bill, and defendants in their answer stated a different agreement, and Lord Eldon decreed specific performance, according to the answer. (Mortimer v. Archer, 2 Ves. 243.) But the statute of frauds was not pleaded, nor relied on by the defendants. Formerly, specific performance was decreed where the parol agreement was confessed in the answer, although the statute of frauds was insisted on as a defence. (Child v. Godolphin, 1 Dick. 39.) But this doctrine may now be considered as entirely overruled, and the doctrine firmly established, that even when the answer confesses the parol agreement, if it insists, by way of defence, upon the protection of the statute, the defence must prevail as a competent bar. (2 Sto. Eq. Ju. § 757; R. C. 1855, p. 1238, § 47.) And this doctrine is only carrying out, and executing the statute; for it is impossible to see how a party can be bound by a contract which the statute declares void, when he insists upon it as a defence, and declines to waive his rights under it.

We are at a loss to determine on what grounds the defendant asks for compensation for his improvements, when he denies that they were made under a valid or binding contract, and shields himself behind the statute of frauds. He asks this court to stretch forth its strong arm of equity inter-

Luckett v. Williamson.

position to protect him, and at the same time divests it of its jurisdiction, by setting up a defence which, if valid, precludes all equitable relief. We have not been able to find the slightest authority in any elementary treatise, or single case in any of the reports, which countenances the idea that a vendor can have specific performance against the purchaser on the ground that he has been placed in possession of the purchased premises, and paid part of the purchase money, when he sets up as a bar the statute of frauds. Courts frequently decree specific performance in favor of a vendee, when he has been placed in possession, paid part of the purchase money, and made valuable improvements, on the ground that to withhold relief under such circumstances would make him the victim of fraud, as he could not be restored to his former condition, and would have no adequate remedy at law. But this doctrine of part performance does not apply to the vendor.

The law was well summed up by Judge Scott in this very case: "We do not see how the plaintiff can meet the plea of the statute by insisting that the defendant has been put in possession, made payment of part of the purchase money, and erected valuable improvements. These circumstances might be insisted on by the purchaser on a bill for specific performance, when the statute was pleaded by the vendor; but if the vendee will waive the right these circumstances conferred on him, we do not see how the vendor can insist on them for him."

The defendant availing himself of the statute of frauds, the parties must be left to their remedy at law.

The judgment is reversed, and the suit dismissed. Judge Holmes concurs; Judge Lovelace absent.